CASE 102.—ACTION BY JOHN R. CLAYTON AND OTHERS
          AGAINST BLANCHE MALLORY AND OTHERS.—
          February 8, 1910.

## Clayton, &c. v. Mallory, &c.

Appeal from Warren Circuit Court.

McKenzie Moss, Circuit Judge.

Judgment for defendants, plaintiffs appeal.—Affirmed.

1.    Wills—Construction—Creation of Trust.—A testator provided
      in his will that his wife hold his property in trust for the
      benefit of their children, and to use it so long as she re-
      mained unmarried, but that it was not his intention to author-
      ize the chancellor to transfer this power to another trustee,
      but on her failing to act as trustee, or removal by the chan-
      cellor, the trust estate should then end, and a legal distribu-
      tion of the estate be made under instructions in the will and
      the law of descent.   The wife died a few weeks after the
      husband, without having qualified as trustee under the will.
      Held, that, on her death, the trust estate ended, and the
      legal distribution of the property took place according to
      the laws of descent to the testator's children, who took the
      property in fee simple, so that any limitation over provided
      in the will became an impossibility.

R. C. P. THOMAS, THOMAS W. THOMAS and GEORGE H. GALLOWAY for appellants:

BRADBURN & BASSHAM for appellees.

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

This action involves the construction of the will of Robert T. Mallory, who died in 1849, domiciled in Bowling Green, Kentucky. The appellants, who were plaintiffs below, instituted the action claiming to be the descendants and heirs-at-law of certain contingent beneficiaries named in the will. The appellee, Blanche Mallory, who was defendant below, claims the property involved in this litigation as devisee under the will of John H. Mallory, a son of Robert T. Mallory. The question is one of law and arises upon the face of the will, which is as follows:

"I, Robert T. Mallory, of Bowling Green, Kentucky, now in good health, but knowing that all must die, do make and publish this, my last will and testament, having no children but those who are also the children of my present wife, Sarah Elizabeth, and having all the confidence in her prudence and discretion, and knowing that she loves our children, as I do, and remembering also that she is young, and probably may in time after my death desire to marry again, and knowing that in law the rights of the woman are in many particulars very different from those of the man, and not wishing to restrict her in any second marriage, should she desire to do so yet while she is a free woman and my widow, I desire to give her extraordinary powers over my property and my children.

"Therefore, it is my will and desire that all my property of every sort, real, personal and mixed, be and the same is hereby given to my wife, Sarah Elizabeth Mallory, in trust for my legal heirs, that is to say, my children by the said Sarah Elizabeth, and the descendants of such as may die before distribution.

"Those claiming as of my children to take in the right of their parent, by the laws of descent, in such cases made and provided and to receive no more than their parent would have received, to each family of children. It is my desire and intention that my wife shall hold my property without limit or restriction except as shall hereafter be named. That she shall not be bound to keep any account against the heirs but may do so if she prefers; that she may if she prefers to do so, give to each child as their wants and circumstances may in her opinion require while they are being raised and educated according to her own best judgment. To some, more, and to others, less, if she finds it right to do so. She is hereby fully authorized to sell all or any personal property and slaves if she thinks it best to do so, collect the debts due me in her own right and use the money in purchasing other property or keep the same on interest as she may think for the best during all the time she may continue to manage my estate as a trustee for my children and heirs. That my children and heirs must suffer the loss should it dwindle in her hands and they will also be the gainers should it grow and increase under her management.

"When my children arrive at the legal age to transact business or should my daughter marry sooner my said wife is requested to give them of such as she can conveniently spare as equally as possible, everything given to my daughter or daughters either money or slaves, personal property or real estate, shall be settled upon them or laid out in suitable property for them and be held by them in their own right and for their separate use notwithstanding coverture.

"The children nor heirs shall have no right to claim a settlement with my said wife when they be-

come of age, or whom the girls marry, nor no right to demand from her any more than in her own best judgment and discretion it is best to give them. She to be the judge as I would be if I was still living. I do not intend to give my said wife authority to sell any real estate, that is to say, my houses and lots in Bowling Green and my farm on the north side of Barren river, such property is valuable and a good investment.

"But I give to her as aforesaid all the rights and profits arising therefrom for the uses aforesaid. It is distinctly to be understood that I give to my said wife my property as aforesaid to be held by her as trustee for my children and heirs, with extraordinary powers because she is their mother as I am their father and should she from any cause be removed from the trusteeship it is not my intention or desire to authorize the chancellor to transfer such extensive power to another trustee, not of my own choosing, but in case of her failing or refusing to act as trustee or of her being removed by the chancellor the trust estate shall then be ended and a legal distribution of the same shall be made agreeable to the aforesaid will and instructions and the law of descent.

"The trust estate shall terminate and all the rights given to my said wife to manage the same as trustee for my heirs, shall terminate upon her intermarriage with any second husband, she would then have lost the right to act independent of her husband and it is right that she should surrender the estate and the power given by this will and this should be done by her before her second marriage.

"It is further my will and I desire that should my said wife while my widow and before any second

marriage, appear in court and surrender her trust and let the new administration be granted and there faithfully deliver the estate in the hands of such administrator, she shall then be allowed dower as if no provision had been made for her by will out of my estate as it may then exist. I would advise my said wife to cause an appraisement of the estate after my death for her own satisfaction. Should it so happen that my children should all die without children or heirs that could inherit my estate then it is my desire that the trust estate in the hands of my said widow shall be divided descend as follows:

"Should my daughter have been married her husband shall have his legal rights as though her portion had been secured for her separate use; the balance to be equally divided between my widow and the son of John B. Helm, which I have raised by the name of Benjamin Mallory Helm and Alexander Hogan, my nephew.

"It is my will and desire and I hereby do appoint my wife, Sarah Elizabeth Mallory, my sole executrix, and most respectfully, most earnestly request the county court to permit her to qualify without giving security. I assure the justices that my situation authorizes me to make the request without doing injury to any one or endangering any creditors' rights, and as soon as she shall have qualified as administratrix, she is requested to settle my debts which I do justly owe with all convenient dispatch.

"Witness my hand and seal, this 25th day of July, 1849.

"(Signed) R. T. MALLORY."

Robert T. Mallory died a short while after the date of his will. In a few weeks after the death of her husband, his wife, Sarah Elizabeth Mallory died with-

cut having qualified or acted as trustee, leaving three infant children, the fruit of her marriage with Robert T. Mallory.  Of these an infant daughter and son died during infancy, unmarried and childless. The remaining child, a son named John H. Mallory, lived until the year 1903, and died without ever having had a child born unto him, although he had been twice married. The plaintiffs below (appellants), through Benjamin Mallory Helm and Alexander Hogan, two of the contingent devisees mentioned in the will, claim certain land devised by the testator.  The claim of the plaintiffs is based upon the theory that the trust established by the will continued until the last child of Robert Mallory died, at which time the estate was to be distributed; and, as at this time there were no living descendants of the children of the testator, the property went in equal parts to the contingent devisees or their heirs.  It is the theory of appellee, Blanche Mallory, that, at the death of Sarah Elizabeth Mallory, the trust terminated, and the property then vested in fee simple in the three children of the testator; that, as two of these died in infancy and childless, their shares descended to their brother, John H. Mallory, and finally became her property as devisee under the will of John H. Mallory. It will simplify the question before us to say that, if the theory of appellee is correct, it is not disputed by appellants that the property involved in this litigation belongs to her.  We will, then, proceed to ascertain whether or not appellee's theory be correct.

The testator, after giving his reasons for investing his wife with the extensive powers over his property that were bestowed upon her by the terms of his will, says:  "* * * It is not my intention or desire to authorize the chancellor to transfer such

extensive power to another trustee, not of my own
choosing, but in case of her failing or refusing to act
as trustee or of her being removed by the chancel-
lor, the trust estate shall then be ended, and a legal
distribution of the same shall be made agreeable to
the aforesaid will and instructions and the law of de-
scent.''

The petition states that the wife died within a few
weeks after her husband, without having qualified
or acted as trustee under the will. This being true,
by the very terms of the instrument the trust estate
ended and a legal distribution of the property took
place in accordance with the law of descent; that is,
the children of the testator took the property in fee
simple.

It is true that the testator does not say in express
words that the trust shall end upon the death of his
wife; but this was not necessary. The keystone of
interpretation of wills is the intention of the testator.
No one can read the will under consideration without
ascertaining that the central idea of the testator with
regard to the trust established for the benefit of the
children was that it was to be executed by his wife
only. Therefore he provided expressly that the court
was not authorized to appoint a successor if for any
reason she was removed or because incapacitated to
act. He also provided in express terms that if she
failed or refused to act as trustee, or married and
thereby became incapacitated to act, then the trust
was to terminate and the estate be distributed accord-
ing to the laws of descent. The date of distribution
was the time the trust ended. The trust ended when-
ever for any reason the wife could or would not per-
sonally execute it. When the wife died, she could
not, of course, execute the trust, and therefore ''fail-
ed to act'' within the meaning of the language which

provided for the cessation of the trust if the wife "failed to act" as trustee. The contingent beneficiaries were only to receive his estate upon complete failure of issue at the time of distribution. Therefore, as said before, there having been three children of the testator alive at the time of distribution—i. e., the death of their mother—they took the estate and the limitation over became an impossibility.

The chancellor was right in sustaining the general demurrer to the petition, thereby holding that the three children of the testator took the whole estate in fee simple upon the death of their mother, and his judgment dismissing the petition is affirmed.